# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

———————————————

## No. ACM 24021

———————————————

### UNITED STATES
*Appellee*

**v.**

### Luke M. TOZER
Captain (O-3), U.S. Air Force, *Appellant*

———————————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 1 April 2025

———————————————

*Military Judge*: Jennifer E. Powell.

*Sentence*: Sentence adjudged 21 December 2022 by SpCM convened at Joint Base Pearl Harbor-Hickam, Hawaii. Sentence entered by military judge on 2 June 2023: Forfeiture of $4,321.00 pay per month for 5 months and a reprimand.

*For Appellant*: Major Nicole J. Herbers, USAF.

*For Appellee*: Colonel Zachary T. Eytalis, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, WARREN, and BREEN, *Appellate Military Judges*.

Judge BREEN delivered the opinion of the court, in which Chief Judge JOHNSON and Judge WARREN joined.

———————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

[1] Appellant appeals his convictions under Article 66(b)(1)(A), Uniform Code of Military Justice, 10 U.S.C. § 866(b)(1)(A) (*Manual for Courts-Martial, United States* (2024 ed.)).

———————————————

BREEN, Judge:

A special court-martial composed of a military judge alone convicted Appellant, consistent with his plea and pursuant to a plea agreement, of one specification of physical control of a vehicle while drunk in violation of Article 113, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 913.[2] The military judge sentenced Appellant to forfeiture of $4,321.00 pay per month for five months and a reprimand. The convening authority took no action on the findings or sentence but provided the language for the reprimand.

Appellant raises two issues on appeal, which we reworded: (1) whether trial counsel committed prosecutorial misconduct in his sentencing argument; and (2) whether Appellant's sentence is inappropriately severe.

Finding no error that materially prejudiced Appellant's substantial rights, we affirm the findings and sentence.

## I. BACKGROUND

On 12 May 2022, Appellant lived on Joint Base Pearl Harbor-Hickam (JBPHH), Hawaii, but worked at another government facility approximately 20 miles away. Appellant normally performed duties during a day shift at the facility, but on this night, he was scheduled to work the overnight shift from 2000 hours to 0800 hours.

In the days leading up to his switch to overnight duty, Appellant tried to adjust his "biological clock" by sleeping during the day, but he was not able to get much sleep. On the day of his shift, Appellant continued to have problems going to sleep and decided to see if drinking alcohol might help. He consumed "several" large alcoholic seltzer drinks over the course of approximately two hours, but the plan did not work. By the time Appellant needed to leave for work he felt tired and weak.

On his way to work that night, Appellant realized that he forgot a necessary identification card at home, and he turned his vehicle around to drive back to JBPHH. As Appellant approached an entry gate, a gate guard observed Appellant "swerve" before stopping at the wrong line. The gate guard waved Appellant forward to clear his entry onto JBPHH. During their subsequent interaction, the gate guard believed he smelled alcohol on Appellant and that

———————————————

[2] All references in this opinion to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

Appellant was slurring his words. At this point, the gate guard called for a Security Forces Squadron (SFS) patrolman to investigate whether Appellant was operating his vehicle while drunk.

The SFS patrolman approached Appellant's vehicle and noticed Appellant had "an odor of alcohol, slurred speech, and red, bloodshot eyes." Appellant participated in Standardized Field Sobriety Tests but failed. Based on their observations, the SFS patrolman apprehended Appellant and transported him to the Honolulu Airport Sheriff's Department (HASD) to collect a breath sample for analysis. After arriving at HASD, Appellant declined consent to provide a blood or breath sample.

After Appellant's refusal to voluntarily provide a sample for testing, SFS requested search authorization from Appellant's commander, and his commander authorized the search and seizure of Appellant's blood. SFS transported Appellant to the Tripler Army Medical Center (TAMC) to obtain the blood sample. TAMC personnel drew Appellant' blood and sent the sample to the Armed Forces Medical Examiner System (AFMES) for analysis. On 3 June 2022, AFMES reported Appellant's blood sample tested positive for ethanol at .235 percent (grams per 100 milliliters of blood), which exceeded the legal limit of .08 percent.

## II. DISCUSSION

### A. Trial Counsel's Sentencing Argument

Appellant argues that trial counsel committed prosecutorial misconduct by (1) arguing that Appellant's prior nonjudicial punishment for the same offense warranted an increased sentence at trial, and (2) impermissibly arguing "unit impact" evidence that was not directly related to his offense, which created the appearance that Appellant deserved additional punishment because of his duty position. We disagree.

#### 1. Additional Background

##### a. Nonjudicial Punishment

During the Government's sentencing case, trial counsel offered a Record of Nonjudicial Punishment (NJP) as Prosecution Exhibit 4. This document, dated 23 December 2019, provided evidence of Appellant's prior punishment under Article 113, UCMJ, 10 U.S.C. § 913, for the offense of physically controlling a passenger car while drunk. Punishment for this offense included forfeiture of $1,000.00 in pay and a reprimand.

During the Government's sentencing argument, trial counsel made several references to Appellant's nonjudicial punishment:

And we now know that this isn't even his first time getting into trouble with driving while intoxicated. Because we know, based off the NJP he received back in 2019, he got an NJP for driving while under the influence. And, so, it is clear that the accused does not care or have an appreciation for the consequences or doesn't really appreciate the seriousness of this offense.

And, so, that is why we are asking for the max punishment in this case. We are asking for two-thirds forfeitures for five months and a reprimand. This punishment is necessary to specifically deter the accused from committing this offense again and also protecting the general community from him ever driving while intoxicated. And, also, it provides a general deterrence to the general public, and it promotes respectability [sic] for the law and reflects the seriousness of the offense.

And, so, when we talk about specific deterrence, as I mentioned earlier, he got an NJP for this; and, as punishment, he got, or he received $1,000[.00] forfeiture and a reprimand. And that was supposed to be a clear warning to Captain Tozer. That was supposed to be a clear warning that his conduct of driving under the influence would not be tolerated and that he needs to change his actions; because, as a junior officer, he is responsible for leading Airmen, he is responsible for mentoring Airmen and being somebody that they can look up to.

However, not even three years later, we see him getting in trouble for the same type of misconduct. We see him driving three times the legal limit, three times the legal limit [sic], going to work. So, it is evident that that previous punishment of $1,000[.00] forfeitures did not have any effect on Captain Tozer. He did not get that message.

And, so, that is why, Your Honor, we are asking for you to give the max[imum] punishment, to make it clear, to make it clear [sic] to Captain Tozer that driving under the influence is unacceptable, that this is a type of conduct that we will not allow, and that will send a clear message to him that he needs to stop, he needs to think twice before he even thinks about driving, getting behind the wheel of a car while intoxicated. . . .

### b. Duty Position

As part of the Government's sentencing case, trial counsel also called Appellant's commander, Lieutenant Colonel (Lt Col) DN, as a witness.

Lt Col DN testified Appellant was a Senior Operations Officer (SOO). In order to perform duties as a SOO, a member must complete "roughly" 90 days of training and must maintain a top-secret security clearance. Appellant was one of two SOOs in their unit, and, based on additional Naval officer staffing, there were between two and four total SOOs working in their facility. The SOOs do not work together and alternate shifts to maintain 24-hour coverage.

After Appellant's apprehension for suspicion of physically controlling a vehicle while drunk, a SOO from the Navy had to cover Appellant's shift that night. Additionally, once Appellant's security clearance was "removed," Appellant was no longer permitted to work in the facility, and was reassigned to other administrative duties. In his absence, the Navy had to cover the vacant position until a new Air Force officer arrived and completed SOO training. In total, there was a six-month gap requiring coverage with "other personnel" providing additional coverage for personnel filling the SOO gap.

Based on this evidence, trial counsel discussed the impact Appellant's misconduct had on operations within his work center:

> And as Colonel [DN] explained, Captain Tozer is in a very . . . one of the most important positions in the Indo Pacific. And, so, while he was having his blood drawn, somebody else had to pick up the slack because he decided that . . . he made the conscious decision to get behind the wheel of a car while intoxicated.

> And he made a conscious decision that he would get behind the wheel of a car, drunk, three times the legal limit, to get to work, in a position where he has the ear . . . if anything were to happen, he has the ear of [senior leaders of the U.S. Government]. He is tasked with making crucial decisions. And he was willing to show up to work that day, drunk, three times the legal limit.

> And even after that incident, as you heard from Colonel [DN], it had ripple effects throughout the unit, ripple effects that lasted six months. And that's why we're asking for the two-thirds forfeitures for five months, because since his unit had to deal with those consequences for six months, he should have to deal with the consequences for the max[imum] amount . . . , which is two-thirds forfeitures for five months.

> And as you heard from Colonel [DN], they had to pull another [company grade officer (CGO)], who was billeted to be a flight commander, they had to pull him to get him trained up to be the special operations officer. And, as you heard, it takes about 90

days to get trained up. And in the meantime, the Navy had to pick up the slack and provide somebody else to fill that position.

And, then, we also heard those other subsequent consequences. We heard from Colonel [DN] that because that CGO flight commander had to be pulled to be a special operations officer, that left three senior [noncommissioned officers] to pick up that CGO's work, and that caused them stress. That caused additional stress because they had to do their normal duties in addition to flight commander duties.

And, so, when you look at this misconduct in whole, you see that this misconduct had drastic ramifications, not just to himself, but to the joint environment, to the Navy and to the unit themselves.

(First three omissions in original).

Appellant did not object at any point during trial counsel's sentencing argument. Additionally, the military judge did not make any references to trial counsel's argument when she sentenced Appellant.

### 2. Law

We review allegations of improper argument and prosecutorial misconduct de novo. *United States v. Voorhees,* 79 M.J. 5, 9 (C.A.A.F. 2019) (citation omitted). When there is no objection during argument, we review for plain error. *United States v. Norwood*, 81 M.J. 12, 19 (C.A.A.F. 2021) (citation omitted). The burden of proof under plain error review is on the appellant who must show: "(1) there was error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *Id.* (internal quotation marks and citation omitted). "As all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

In adjudging an appropriate sentence at trial, the Rules for Courts-Martial mandate "the court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces, taking into consideration," *inter alia*, "the impact of the offenses on . . . the mission, discipline, or efficiency of the command of the accused," and "the need for the sentence to . . . promote adequate deterrence of misconduct." Rules for Courts-Martial (R.C.M.) 1002(f)(2)(B); (f)(3)(D). Furthermore, in sentencing argument, "[t]rial counsel may . . . refer to the sentencing considerations set forth in R.C.M. 1002(f)." R.C.M. 1001(h).

In *United States v. Fletcher*, our superior court identified three factors to consider when determining whether the alleged prosecutorial misconduct prejudiced an appellant's substantial rights by impacting the integrity of his trial: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." 62 M.J. 175, 184 (C.A.A.F. 2005).

In *United States v. Halpin*, our superior court extended the *Fletcher* prejudice test to allegations of improper sentencing arguments. 72 M.J. 477, 480 (C.A.A.F 2013). "In applying the *Fletcher* factors in the context of an allegedly improper sentencing argument, we consider whether trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that an appellant was sentenced on the basis of the evidence alone." *Id.* (alteration, internal quotation marks, and citation omitted). Finally, "the argument by a trial counsel must be viewed within the context of the entire court-martial." *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F 2000). Thus, "[t]he focus of our inquiry should not be on words in isolation, but on the argument as viewed in context." *Id.* (internal quotation marks and citations omitted).

In arguing the merits of a specific sentence, "[t]rial counsel is entitled to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quotation marks and citation omitted). As with findings argument, "trial counsel is at liberty to strike hard, but not foul, blows" during sentencing argument. *Halpin*, 72 M.J. at 479 (quotation marks and citation omitted). Deterrence of the wrongdoer and rehabilitation potential are two principles of sentencing, among others. *United States v. Ohrt*, 28 M.J. 301, 305 (C.M.A. 1989); *see also* Rule for Courts-Martial (R.C.M.) 1001(g).

"[T]he lack of a defense objection is 'some measure of the minimal impact of a prosecutor's improper comment.'" *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 396 (C.A.A.F. 1999)).

Appellant "faces a particularly high hurdle" to show plain error when the military judge is the sentencing authority. *See United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000). "Military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Erickson*, 65 M.J. 222, 335 (C.A.A.F. 2007) (citing *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997) (per curiam)). "As part of the presumption we further presume that the military judge is able to distinguish between proper and improper sentencing arguments." *Id.* The failure of the military judge to

note improper argument on the record does not rebut the presumption that the military judge distinguished between proper and improper argument; an appellant must provide evidence to rebut the presumption. *Id.*

In a plain error analysis, the most straightforward way of resolving an allegation of prosecutorial misconduct may be to do so based on prejudice. *United States v. Palacios Cueto*, 83 M.J. 323, 335 (C.A.A.F. 2022) (citation omitted).

**3. Analysis**

Because trial defense counsel did not object to trial counsel's sentencing argument during Appellant's court-martial, we review the argument for plain error. After closely examining trial counsel's argument in its entirety, we find Appellant failed to meet his burden of establishing plain error.

In terms of Appellant's prior nonjudicial punishment for physically controlling a passenger car while drunk, trial counsel articulated Appellant's current conviction for the same offense demonstrating Appellant's lack of appreciation for the "seriousness" of the offense. Trial counsel argued that the sentence in this case required a sufficiently severe punishment to "specifically deter the accused from committing this offense again." This argument and additional arguments related to Appellant needing a "clear warning" and a "clear message" are proper references to the sentencing philosophy of specific deterrence. *See* R.C.M. 1001(h) ("Trial counsel may . . . refer to sentencing considerations set forth in R.C.M. 1002(f)"); R.C.M. 1002(f)(3)(D) (reciting "promot[ing] adequate deterrence of misconduct" as an appropriate sentencing consideration). Although Appellant argues that this evidence should only have been considered for rehabilitation potential, arguments related to specific deterrence are particularly fair comments when the evidence admitted at trial demonstrated that Appellant did not learn to refrain from driving drunk after his first offense. *See id.*

Regarding the remaining arguments related to "unit impact," we need not determine whether they amount to plain or obvious error, and we may resolve the issue by assuming, without deciding, error and evaluating prejudice. *See Palcios Cueto*, 82 M.J. at 335. The majority of trial counsel's sentencing argument focused on specific deterrence and, when trial counsel did reference "unit impact," he returned to the deterrence philosophy when making his final sentence recommendation, which was clearly a stronger sentencing argument. Additionally, the sentencing authority was a military judge sitting alone, and the military judge made no comments on the record ratifying trial counsel's sentencing argument. The record contains no evidence that can overcome the presumption that the military judge was able to distinguish between proper

and improper arguments at trial. Taken as a whole, we find trial counsel's comments were not so damaging that we cannot be confident that Appellant was sentenced based on the evidence alone. *Halpin*, 71 M.J. at 480.

We conclude that Appellant has failed to establish plain error and therefore is not entitled to any relief.

## B. Sentence Severity

### 1. Additional Background

On 16 December 2022, after receiving advice from competent counsel, Appellant and the general court-martial convening authority (GCMCA) entered into to a plea agreement whereby Appellant agreed to plead guilty before a military judge alone in exchange for the GCMCA agreeing to withdraw the Charge and its sole specification from a general court-martial and refer the Charge and specification to a special court-martial. The plea agreement also contained a limitation on sentence consisting of no more than forfeiture of two-thirds pay per month for a period of five months and no less than forfeiture of two-thirds pay per month for a period of two months.

In accordance with the plea agreement, the military judge sentenced Appellant to the maximum imposable sentence of forfeiture of two-thirds pay for a period of five months and a reprimand.

### 2. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2016) (footnote omitted). We may affirm only as much of the sentence we find correct in law and fact. Article 66(d), UCMJ, 10 U.S.C. § 866(d). In review of judge-alone sentencing, we "must consider the appropriateness of each segment of a segmented sentence and the appropriateness of the sentence as a whole." *United States v. Flores*, 84 M.J. 277, 278 (C.A.A.F. 2024). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted).

In plea agreement cases, "[a]bsent evidence to the contrary, [an] accused's own sentence proposal is a reasonable indication of its probable fairness to him." *United States v. Cron*, 73 M.J. 718, 736 n.9 (A.F. Ct. Crim. App. 2014) (quoting *United States v. Hendon*, 6 M.J. 171, 175 (C.M.A. 1979)). Thus, when considering the appropriateness of a sentence, courts may consider that a pretrial agreement or plea agreement—to which an appellant agreed—placed limits on the sentence that could be imposed. *United States v. Fields*, 74 M.J.

619, 625–26 (A.F. Ct. Crim. App. 2015). However, a sentence within the range of a pretrial agreement or a plea agreement may be inappropriately severe. *See id.* at 626.

Although Courts of Criminal Appeals are empowered to "do justice[ ] with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)).

### 3. Analysis

Despite Appellant entering a plea agreement that included two-thirds forfeiture of pay for five months as a maximum imposable punishment, Appellant contends that his sentence is inappropriately severe based on the lack of aggravating evidence, the existence of what he depicts as "mitigating evidence,"[3] and the fact that his adjudged punishment was disproportionately greater than the punishment he received for nonjudicial punishment and the maximum possible "financial penalty"[4] available in the State of Hawaii. Therefore, he requests this court reassess his sentence. We are not persuaded Appellant's sentence is inappropriately severe.

As detailed in Appellant's guilty plea and the evidence admitted a trial, Appellant made the conscious decision to consume "several" large alcoholic beverages in the hours leading up to his shift and then attempted to drive 20 miles to perform military duties. After his apprehension, the subsequent investigation revealed Appellant's inability to pass a sobriety test, and that Appellant had a blood alcohol content that was nearly three times the legal limit. All these actions occurred after Appellant had already received NJP for the same offense in 2019.

We note in this case that Appellant, with the assistance of competent counsel (whose competence he challenged neither at trial nor now on appeal), negotiated and secured a plea agreement whereby he agreed to a maximum

---

[3] Appellant's brief asserted the following items function as "mitigating evidence": (1) Appellant was sleep deprived and suffering from severe sleep apnea at the time of his convicted misconduct; (2) Appellant pleaded guilty and accepted responsibility for his conduct at trial; and (3) Appellant received an Air Force Commendation Medal for periods of service falling after he received nonjudicial punishment, which, Appellant's brief argues, "tends to show the restorative effect of the 2019 Article 15 [NJP] action."

[4] Appellant relies on the phrase "financial penalty" because Haw. Rev. Stat. §291E-61 imposes a mandatory minimum confinement period of 48 consecutive hours and a maximum confinement period of five days for an individual with the same blood alcohol content as Appellant, and a maximum of 30 days confinement for a second offense within ten years.

punishment that would include forfeiture of two-thirds pay for a period of five months. The military judge properly ensured the plea agreement was entered into voluntarily and by Appellant's own free will, and she also ascertained that Appellant did not wish to withdraw from the agreement. Moreover, even without the plea agreement, the sentence is not inappropriately severe.

Having considered the nature and seriousness of Appellant's misconduct, and matters contained in the entire court-martial record, including his record of service, all matters submitted in mitigation, and his written and oral unsworn statements, we conclude the entire adjudged sentence, to include the adjudged forfeitures of two-thirds pay for five months, fairly and appropriately punished Appellant for his misconduct. Therefore, the adjudged and entered sentence is not inappropriately severe.

## III. CONCLUSION

As entered, the findings are correct in law, and the sentence is correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Article 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d); *see* National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 542(b)(1)(A), 134 Stat. 3388, 3611–12 (2021). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court